[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11857
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-00068-JRH-BKE-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TYRONE A. MCDONALD,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(May 24, 2016)

Before WILLIAM PRYOR, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Tyrone McDonald appeals his convictions for possession of marijuana, methamphetamine, and cocaine hydrochloride with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and 18 U.S.C. § 2 (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) (Count Three). Specifically, Mr. McDonald challenges the sufficiency of the evidence to support his convictions, the admission of his prior convictions into evidence, and a jury instruction on flight.

## I

On November 25, 2013, officers with the Richmond County Sherriff's Office approached 2454 Belgrade Court in an attempt to serve outstanding felony arrest warrants on two individuals. One group of officers approached the front of the house. A separate team of officers was positioned in a wooded area behind the residence to intercept anyone fleeing in that direction. As the officers pulled up to the house, various individuals who had been standing in front of the house ran towards the back of the house, through a gap in a wooden privacy fence, and into the wooded area. One of those individuals was Mr. McDonald. When officers apprehended Mr. McDonald, he laid on the floor and said, "I give up. Man, I'm done."

Officers then deployed a trained narcotics dog to conduct an open air search of the wooded area for contraband.  Mr. McDonald lived at 2458 Belgrade Court—two houses down from 2454 Belgrade Court.  In the wooded area behind his house, which was not separated by a fence or other enclosure, police found various items, including: a Mount Olive glass pickle jar, which was sitting in plain view, containing vacuum sealed bags of marijuana; a Bushmaster AR-15 assault rifle, located on the ground nearby and partially covered by a red plastic bag; and a closed box buried in the ground containing an Eaton's pickle jar with three baggies of methamphetamine and cocaine, a digital scale, as well as a mason jar containing another digital scale and a baggie of marijuana.

The police conducted a fingerprint analysis of the recovered items and found Mr. McDonald's fingerprints on the Bushmaster AR-15, the Eaton's pickle jar, and the mason jar.  No other person's fingerprints were recovered from the items.  A print that could not be excluded as Mr. McDonald's was found on one of the vacuum-sealed bags of the marijuana in the Mount Olive pickle jar.  In total, the officers recovered 224.3 grams of marijuana, 13.8 grams of methamphetamine, and 0.37 grams of cocaine.  The police estimated the value of the drugs to be $1,500 for the marijuana, $400 to $450 for the methamphetamine, and $50 to $70 for the cocaine.

3

At trial, the government sought to admit Mr. McDonald's prior convictions for possession of marijuana with intent to distribute, possession of cocaine, and possession of marijuana. Mr. McDonald objected, but the district court admitted the evidence under Federal Rule of Evidence 404(b), as evidence of similar acts relevant to Mr. McDonald's intent in possessing the narcotics charged.

At the close of the government's case, Mr. McDonald moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the evidence was legally insufficient. The district court denied the motion. After presenting his case, Mr. McDonald did not renew his motion for acquittal and did not file a motion for a new trial. The government requested a flight instruction, which the district court issued over Mr. McDonald's objection. The jury convicted Mr. McDonald on all counts.

## II

Mr. McDonald first challenges the sufficiency of the evidence as to all charges. Generally, we review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in favor of the verdict. *See United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006). But where a defendant moves for a judgment of acquittal at the close of the government's case and does not renew the motion at the close of the evidence, we will uphold a conviction "unless there is a manifest

4

miscarriage of justice—if the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Bischel*, 156 F.3d 1148, 1150 (11th Cir. 1998) (internal quotation marks and citation omitted).

On appeal, Mr. McDonald argues that the evidence did not establish a physically tangible connection between himself and the drugs and AR-15. He says that the fingerprint evidence that tied Mr. McDonald to the contraband was purely circumstantial, and the police did not establish that the fingerprints could only have been impressed by Mr. McDonald at the time of the commission of the crime charged. This argument is unpersuasive.

When examining the sufficiency of the evidence, we do not distinguish between circumstantial and direct evidence. *See United States v. Tate*, 586 F.3d 936, 945 (11th Cir. 2009). Moreover, it is unnecessary, as Mr. McDonald argues, for the police to have found the contraband on his person or seen him discard the contraband during the pursuit through the woods: possession can be actual or constructive. *See United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008).

"Constructive possession exists when a defendant has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion." *United States v. Derose,* 74 F.3d 1177, 1185 (11th Cir. 1996) (internal quotation marks and citation omitted). Here all of the contraband items were found in the

5

wooded area directly behind Mr. McDonald's house and no fence separated that area from the house.  Mr. McDonald's fingerprints were recovered from the jars containing the drugs and electric scales, as well as from the AR-15 assault rifle. No other person's fingerprints were on the contraband, and the government presented testimony from a fingerprint analyst pertaining to weather conditions possibly degrading fingerprints, from which an inference could be drawn that the fingerprints were made close in time to the arrest.  This evidence is enough to support the jury's finding of constructive possession.

Moreover, when reviewing the evidence presented for each count charged, we find it sufficient to support Mr. McDonald's convictions.

"To convict a person of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1), the government is required to prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute." *United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014) (internal quotation marks and citation omitted).  The evidence presented at trial showed Mr. McDonald's fingerprints on the Eaton's and mason jars, which contained the drugs and scales. There was also testimony regarding the amount of drugs found and the digital scales, which indicated an intent to distribute.  *See United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) ("Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements

6

such as scales commonly used in connection with the distribution of cocaine.").

Moreover, the contraband was located right behind Mr. McDonald's home, in an

area not separated by any type of barrier.  Finally, evidence of Mr. McDonald's

prior convictions suggested that he had the intent to distribute the illegal drugs.

This evidence collectively is sufficient to support the jury's conviction on Count

One.

To obtain a conviction for a violation of 18 U.S.C. § 922(g)(1), the

government must prove that (1) the defendant was a convicted felon; (2) he

knowingly possessed a firearm; and (3) the firearm was in or affected interstate

commerce.  *See United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

Both parties stipulated to the fact that Mr. McDonald was a convicted felon.

Additionally, police recovered Mr. McDonald's fingerprints from the Bushmaster

AR-15, which was located in the same area as the drugs, behind Mr. McDonald's

house.  Once again, this is sufficient for a reasonable jury to find that Mr.

McDonald had constructive possession of the firearm.  Finally, the government

introduced evidence that the AR-15 rifle had been manufactured in Utah and had

traveled to Maine before finally entering Georgia, which satisfies the interstate

commerce element. Sufficient evidence was presented to support the jury's

conviction on Count Three.

Finally, 18 U.S.C. § 924(c) provides enhanced penalties for possessing a firearm in furtherance of any drug trafficking crime in which a defendant is involved. *See* 18 U.S.C. § 924(c)(1)(A). While the presence of a gun during a drug-trafficking offense is not sufficient, by itself, to sustain a § 924(c) conviction, additional evidence, such as evidence of the firearm's accessibility, its proximity to the drugs, the time and circumstances under which the gun is found, and the type of gun can meet the standard necessary to sustain a conviction. *See United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002). Here, the AR-15 assault rifle was found in close proximity to the illegal drugs; both the assault rifle and the drugs bore Mr. McDonald's fingerprints; and the narcotics dog alerted because the AR-15 assault rifle was covered in drug residue, indicating that someone had handled it after touching drugs. Finally, the government presented evidence that guns are often used in drug deals for protection, and that keeping the gun near drugs was intimidating in and of itself. Thus, a reasonable jury could conclude Mr. McDonald possessed the AR-15 assault rifle in furtherance of trafficking drugs.

In sum, the evidence is not so tenuous that Mr. McDonald's convictions are shocking. Because they do not constitute a manifest miscarriage of justice, we uphold Mr. McDonald's convictions.

8

### III

Mr. McDonald also argues that the government introduced his prior convictions for possession of marijuana with intent to distribute, possession of cocaine, and possession of marijuana as improper character and propensity evidence. We disagree.

We review a district court's ruling on the admissibility of evidence for abuse of discretion. *See United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009). Although evidence of past acts or crimes is inadmissible to prove a person's character to show that on a particular occasion a person acted in conformity with that character, it is admissible to prove, among other things, intent and knowledge. *See* Fed. R. Evid. 404(b). "For evidence of other crimes to be admissible under Rule 404(b), (1) it must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially outweighed by undue prejudice, and the evidence must satisfy Rule 403." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citation omitted).

Here, the district court found the prior convictions relevant to the issue of intent, as Mr. McDonald raised the issue of intent by pleading not guilty to the charged offenses and by arguing he did not possess the contraband. *See id.* at 1345

(noting that a defendant who enters a not guilty plea makes intent a material issue absent affirmative steps to remove intent as an issue).  Next, the district court held that there was sufficient proof to permit a jury finding that the defendant committed the prior acts because the government offered into evidence certified copies of the convictions.  Finally, the district court found that the probative value of the evidence would not be substantially outweighed by any prejudicial effect because the convictions were "not so heinous as to shock the jury" or create a significant prejudicial effect.  Moreover, the district court issued a limiting instruction directing the jury to consider the prior convictions only for proper Rule 404(b) purposes.  We conclude that the district court did not abuse its discretion in admitting this evidence.

## IV

Finally, Mr. McDonald argues that the district court erred in giving a flight instruction because there was insufficient evidence from which a jury could conclude that he ran from police to avoid apprehension for the charged crimes.  We review a district court's jury instructions under an abuse of discretion standard.  *See United States v. Williams*, 541 F.3d 1087, 1089 (11th Cir. 2008).

"Evidence of flight is admissible to demonstrate consciousness of guilt and thereby guilt."  *Id.* (internal quotation marks and citation omitted).  A district court's use of a flight instruction is not an abuse of discretion if a reasonable jury

could find, based on the evidence, that the defendant fled the police to avoid the charged crime. *See id.* As we have explained:

> The probative value of evidence depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (1) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*United States v. Wright,* 392 F.3d 1269, 1278 (11th Cir. 2004) (citation omitted).

We have approved flight instructions even when the evidence could support more than one motive for flight, because it is for the jury to infer the reason for the defendant's decision to flee. *See id.* at 1279. In *Williams*, for example, the defendant fled from police, was apprehended, and was charged with possession with intent to distribute five grams or more of cocaine base. *Williams*, 541 F.3d at 1088. At the time of the chase, the defendant had at least five outstanding warrants for his arrest that were unrelated to the eventual charged crime. *See id.* at n.2. There, we held that a reasonable jury could have found that the defendant fled to avoid the charged crime as opposed to the numerous other offenses. *See id.* at 1089.

Here, Mr. McDonald did not have any outstanding warrants or any other reason for his flight, but he nonetheless still fled as police approached the residence. When he was apprehended, Mr. McDonald said, "I give up, Man, I'm

done." Two doors down, behind Mr. McDonald's house, police found contraband with Mr. McDonald's fingerprints. In sum, viewing this evidence in the light most favorable to the government, *see Wright*, 352 F.3d at 1279, we do not find that the district court abused its discretion by issuing the flight instruction.

## V

For the foregoing reasons, we affirm the district court's rulings on the admission of evidence and the use of a flight instruction, as well as Mr. McDonald's convictions.

**AFFIRMED.**